On Reheating.
PROVOSTY, J.
[3] The language of the act of-1849 is that, on the approval by the Secretary of the Treasury of a list of lands, “the fee simple to said lands shall vest in the state of Louisiana.” But the lands of which .a list may be thus approved are only those which “are not claimed or held by individuals,” and the evidence in this case shows that this' Brazilier’s Island (which is, in fact, an island) was" both claimed and held by the persons under whom defendants claim, at the time of the approval to the state. Whether that claim was well fo.unded or not is a matter which the authorities of the land Department of the government have decided in favor of defendants, to whom they have issued a patent. The only question, in reality, which this court is called upon to investigate in this case is whether ,this land at the time of the approval to the state was “claimed or held by individuals.” If it was, then the Secretary of the Treasury was not authorized to approve it to the state, and his approval would have been coram non judice and of no effect.
[4] That this island has been continuously claimed by the heirs of Brazilier and their assigns the record leaves no room for question. In 1816 the commissioners for ascertaining and adjusting claims to lands in the Eastern district of Louisiana reported on this claim of the Brazilier heirs to this island as follows:
*531 “No. 509. The heirs of Brazilier claim a tract of land situated near Chef Menteur, in the Lake Pontchartrain, known by the name of Brazilier’s Island. The claimants having proved settlement and cultivation of this island more than ten consecutive years prior to the 20th of December, 1803, we are of the opinion they ought to be confirmed in their claim to a quantity not exceeding two thousand acres. * * * ”
This island had not yet been surveyed at that time, and no one knew, its exact area. Things remained in that condition until 1849, when all swamp lands in the state of Louisiana were granted, by Congress to the state for levee and drainage purposes. The heirs •of Brazilier then became active, and, through their attorney, Henry Train, Esq., took up with the General Land Office the matter of this claim. In August, 1850, through the same attorney, they were active in procuring the surveyor general to cause a survey to be made; and after correspondence, and delays incident to lack of funds, a survey of the township was finally made in' 1853. On October 17, 1853, the surveyor general of Louisiana wrote to Mr. Train as follows:
“In compliance with the request contained in your letter of the 10th inst. you will herewith receive a certified extract from the field notes of T. 11 S. 14 E. in the S. E. district, La., and to make it intelligible, it is accompanied by a copy of the map. The fees for ’Which are noted thereon in pencil.
“Under the act of 2d March, 1849, the whole of this township was selected as swamp lands, inuring to the state of Louisiana, with the exception of such portions as might be rightfully claimed by individuals.
“The claim of the heirs of Brazilier, B. & B. 509, covers this land lying between the Bayou de Lesiare and the Chef Menteur and Lake Pontchartrain, while upon the east side of the former bayou, is to be located the claim of Guy de Eossat, B. & B. No. 405, having a depth of 1% arpens and extending from the Bigolets to Lake Borgne, which, with the claim of Brazilier was confirmed by act of 11th May, 1820.”
The township map transmitted with this letter shows the claim of Brazilier to cover the entire island.
When, therefore, the list of lands was approved to the state in 1852, the heirs of Brazilier were actively urging their claim to this entire island. And it is to be noted that the surveyor general of Louisiana, in submitting the list, qualified it by the clause “excepting such as are rightfully claimed or owned by individuals,” and that the approval of the list by the Secretary of the Treasury was subject to the same qualification, expressed by the clause “in accordance with the second section of the act of 1849.” The approval mentioned the fact that the lands thus approved had never been surveyed.
[5] The commissioners who reported on the heirs of Brazilier’s claim in 1816, and recommended that it be confirmed to the extent of 2,000 acres, were the register and receiver of the United States land office in New Orleans. They were acting under the act of Congress of March 3, 1807 (2 Stats. 440, e. 36), section 2 of which reads:
“That any person or persons * * * who, on December 20, 1803, had for ten consecutive years prior to that date, been in possession of a tract of land not claimed by any other person, and. not exceeding two thousand acres, etc., shall be confirmed in their titles to such tract of land: Provided, * * * that no more land shall be granted by virtue of this section, than is actually claimed by the party, nor more than is contained within the acknowledged and ascertained boundaries of the tract claimed.”
The commissioners did not decide that the claim of the heirs of Brazilier was not good to the whole of the island; but they had, as they thought, no authority to confirm beyond 2,000 acres, and they confirmed as far as their authority extended. As a matter of fact, they did not know, nor did any one else know, what the area of this island was. That knowledge was not obtained until the survey of the township was made in 1853. The fact that the claim was confirmed up to 2,000 did not therefore amount to or operate a rejection of the claim for the remainder; and nothing prevented the government from subsequently recognizing the validity of the claim for the entire island, as was ddne by the patent which subsequently issued to the heirs of Brazilier. The same act of Congress of 1807 which the commissioners interpreted *533 as authorizing them to confirm claims only up to 2,000 acres contained a clause authorizing the confirmation up to one square league; and, doubtless, the Land Department, in issuing' the patent, did so on the theory that the commissioners had found the claim to he entitled to confirmation, and that their having limited their confirmation to 2,000 acres only was due to a misinterpretation of their authority, because they did not consider that under any circumstances they had authority to confirm for more than 2,000, whereas, in fact, they did have authority to confirm for one league square.
It goes without saying that, if the plaintiff or its authors in title had obtained an absolute patent to this land from the United States government, this patent could not he affected by any subsequent act of the Land Department, whether by the issuance of a second patent to some one else, or otherwise.- But the approval of this list of lands in globo and without even any survey having ever been made to the state was conditional, and the condition was written on the face of the documents evidencing the selection- and the approval, and the state accepted the title subject to this condition, and transmitted no better title to her assigns.
The record leaves no doubt that this island has been constantly claimed by the heirs of Brazilier, and that therefore it came squarely under the condition expressed in the selection and approval to the state, and that therefore this- island never passed to the state or to her assigns.
[6] On this rehearing plaintiff concedes that this island was not included in the approval to the state up to the 2,000 as to. which the claim was confirmed, but contend that the claim was never confirmed as to the remainder of the acreage, and that therefore the defendant has no title as to this remainder ; that, inasmuch as this is a jactitation suit, and the defendants by setting up title have assumed the position of plaintiffs in a petitory action, who must succeed upon the.strength of their own title, and not upon the weakness of that of their adversary, the defendants must fail, since they do not show that their claim was ever confirmed by the government.
The answer to that contention is found in the numerous decisions of the Supreme Court of the United States which have established the doctrine expressed by that court in the case of Barden v. Northern Pacific Railroad, 154 U. S. 288, at page 827, 14 Sup. Ct. 1030, at page 1038, 38 L. Ed. 992, at page 1001, as follows:
“It is the established doctrine, expressed in numerous decisions of this court, that wherever Congress has provided for the disposition of any portion of the public lands, of a particular character, and authorizes the officers of the Land Department to issue a patent for such land upon ascertainment of certain facts, that department has jurisdiction to inquire into and determine as to the existence of such facts, and, in the absence of fraud, imposition, or mistake, its determination is conclusive against collateral attack.”
The Land Department has found that the claim of the Brazilier heirs to this island had been confirmed by the government, and that finding is binding upon this court.
The judgment appealed from is therefore affirmed; the plaintiff to pay the costs in both courts.
MONROE, C. J., takes no part.